UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LILIA RIOS,<br><br>         Plaintiff,<br><br>v.<br><br>ANDREW SAUL,<br><br>         Defendant. | Case No.: 19cv704-LL<br><br>**ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>**[ECF Nos. 13, 14]** |

  Plaintiff Lilia R. brings this action for judicial review of the Social Security Commissioner's ("Commissioner's") denial of her claim for disability insurance benefits. ECF No. 1. Before the Court are Plaintiff's Motion for Summary Judgment [ECF No. 13 ("Pl.'s Mot.")], Defendant's Cross-Motion for Summary Judgment and Opposition to Plaintiff's Motion [ECF No. 14 ("Def.'s Mot.") and Plaintiff's Reply in Support of Motion for Summary Judgment [ECF No. 15 ("Pl.'s Reply")].

  For the reasons set forth below, the Court **GRANTS** Plaintiff's Motion for Summary Judgment and **DENIES** Defendant's Cross-Motion for Summary Judgment.

## **PROCEDURAL BACKGROUND**

  On December 10, 2014, Plaintiff filed a Title II application for disability insurance benefits, alleging disability beginning November 21, 2013. Administrative Record ("AR")

1

at 163-64. On April 23, 2015, Plaintiff's claims were denied by initial determination. Id. at 95-100. On June 1, 2015, Plaintiff requested reconsideration. Id. at 101. On August 27, 2015, Plaintiff's application was denied on reconsideration. Id. at 102-106. On September 29, 2015, Plaintiff filed a written request for a hearing. Id. at 108-109.

On July 3, 2017, a hearing was held before Administrative Law Judge ("ALJ") Mark Greenberg. Id. at 33-60. On November 2, 2017, the ALJ issued a partially favorable written decision in which he found that: (1) Plaintiff had been under a disability within the meaning of the Social Security Act from November 21, 2013 through February 3, 2017; and (2) Plaintiff's disability ended on February 4, 2017. Id. at 18-27.

On November 2, 2017, Plaintiff requested review of the ALJ's decision by the Appeals Council. Id. at 2. In a letter dated February 14, 2019, the Appeals Council found no basis for changing the ALJ's ruling. Id. at 2-5. The ALJ's decision thereafter became the Commissioner's final decision.

On April 15, 2019, Plaintiff filed the instant action for judicial review by the federal district court. ECF No. 1. On September 24, 2019, Plaintiff filed a motion for summary judgment. ECF No. 13. On October 24, 2019, Defendant filed a cross-motion for summary judgment. ECF No. 14. On November 6, 2019, Plaintiff filed a reply. ECF No. 15. Defendant did not file a reply. See Docket.

## **SUMMARY OF THE ALJ'S FINDINGS**

The ALJ followed the Commissioner's five-step sequential evaluation process in his written decision. See 20 C.F.R. §§ 404.1520, 416.920. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since November 21, 2013, her alleged onset date. AR at 21.

At step two, the ALJ found that from November 21, 2013 through February 3, 2017, Plaintiff had the following severe impairments: degenerative disc disease of the cervical spine, degenerative disc disease of the lumbar spine, peripheral neuropathy, carpal tunnel syndrome, and pronator cuff syndrome. Id. at 21-22.

At step three, the ALJ found that from November 21, 2013 through February 3, 2017,

2

19cv704-LL

Plaintiff had an impairment that medically equaled one of the impairments listed in the Commissioner's Listing of Impairments (specifically the criteria in Listings 1.04(A) and 11.14). Id. at 22.

The ALJ then determined that Plaintiff did not develop any new impairments since February 4, 2017, and that Plaintiff experienced medical improvement beginning February 4, 2017. Id. at 24. Based on this improvement, the ALJ found beginning February 4, 2017, Plaintiff no longer had an impairment or combination of impairments that met, or medically equaled, the severity of one of the impairments listed in the Commissioner's Listing of Impairments. Id. at 25.

In his RFC assessment, the ALJ found that beginning February 4, 2017, Plaintiff had residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with the following limitations: "lift or carry 10 pounds; frequent bend, stoop, crouch, crawl, climb, kneel, and balance; frequent fine or gross manipulation; occasional overhead reaching; and avoid exposure to cold temperatures." Id.

At step four, the ALJ found that beginning February 4, 2017, Plaintiff was capable of performing her past relevant work as a "bank/order clerk," "customer service representative" and "data entry clerk." Id. at 26.

## **STANDARD OF REVIEW**

Section 405(g) of the Social Security Act permits unsuccessful applicants to seek judicial review of the Commissioner's final decision. 42 U.S.C. § 405(g). The scope of judicial review is limited. A denial of benefits will not be disturbed if it is supported by substantial evidence and contains no legal error. Id.; see also Trevizo v. Berryhill, 871 F.3d 664, 674 (9th Cir. 2017) (citing Benton ex rel. Benton v. Barnhart, 331 F.3d 1030, 1035 (9th Cir. 2003)).

"Substantial evidence is more than a mere scintilla, but may be less than a preponderance." Lewis v. Apfel, 236 F.3d 503, 509 (9th Cir. 2001) (citation omitted). It is "relevant evidence that, considering the entire record, a reasonable person might accept as adequate to support a conclusion." Id. (citation omitted). "In determining whether the

[ALJ's] findings are supported by substantial evidence, [the court] must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the [ALJ's] conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998) (citations omitted). "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Trevizo, 871 F.3d at 674-75 (quoting Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007)). This includes deferring to the ALJ's consistency determinations and resolutions of evidentiary conflicts. See Lewis, 236 F.3d at 509. A court reviews "only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." Garrison v. Colvin, 759 F.3d 995, 1010 (9th Cir. 2014) (citation omitted).

Section 405(g) permits a court to enter judgment affirming, modifying, or reversing the Commissioner's decision. 42 U.S.C. § 405(g). The reviewing court may also remand the matter to the Social Security Administration for further proceedings. Id.

## ANALYSIS

Plaintiff challenges the ALJ's partially favorable decision on two grounds. First, Plaintiff contends the ALJ's rejection of her subjective symptom testimony was legal error. Pl.'s Mot. at 6-8. Second, Plaintiff contends the ALJ further erred by failing to discuss or otherwise consider a function report completed by a third party. Id. at 12-15.

The Court addresses each ground below.

**I.** **Subjective Symptoms Testimony**

    **a.** **Relevant Law**

The Ninth Circuit has established a two-part test to determine "whether a claimant's testimony regarding subjective pain or symptoms is credible[.]" See Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" Id. (quoting Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991)). The claimant "need not show that her impairment could reasonably be expected to cause the severity of the symptom she has

4

alleged; she need only show that it could reasonably have caused some degree of the symptom." Id. (quoting Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996)).

Second, if the claimant meets this first test and there is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." Id. (internal quotation marks and citations omitted). General findings are insufficient; the ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." See Reddick, 157 F.3d at 722 (internal quotation marks and citations omitted). The ALJ's findings must be "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony. Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002).

In weighing a claimant's credibility, an ALJ may consider "[a claimant]'s reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and 'unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment.'" Orn, 495 F.3d at 636 (citations omitted). An ALJ may also consider "testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains." Thomas, 278 F.3d at 959 (citations omitted). If the ALJ's finding is supported by substantial evidence, the court may not second-guess his or her decision. Id.

### b. **Plaintiff's Function Report and Hearing Testimony**

On January 29, 2015, Plaintiff (with assistance) completed a function report. AR at 255-263.[1]

Plaintiff reported she was unable to complete tasks because of pain and had trouble absorbing information. Id. at 255. Plaintiff reported not being able to grip with her hands. Id. Plaintiff reported that she was not able to stand and walk for long, and could not stay in

---

[1] The Court notes that this report was completed prior to February 4, 2017—the date that the ALJ found Plaintiff experienced medical improvement.

5

a single position for prolonged periods of time. Id.

Plaintiff reported that during a typical day:

> She gets up in the morning, get dressed and go for a walk. Come home or shower/eat breakfast. Make her bed, and if she is okay with her pain level she will try and clean a little bit. She then will rest for a couple of hours and then she will try and go back and do small house clean up. Get something light to eat for lunch like a salad or a piece of chicken in the microwave. If she has to go to the store she will do that, or go to the doctors. Takes her a couple of hours to do shopping, her daughter will go with her as well and help carry the grocery items. If her daughter is there she will cook dinner and they will eat dinner/watch TV for a couple hours and then go to sleep. If the night is peaceful she is able to rest. If her pain is severe she will be up frequently during the night.

Id. at 256.

Plaintiff further reported that she would wake up twice a night "from pain and numbness" and that in certain instances she had to "sit down instead of lay down to fall asleep because of the pain." Id.

Plaintiff reported that it would often take her two-three days to complete a task. Id. at 258. Plaintiff reported instances where she became "frozen in pain" to where she could not move. Id. at 262. Plaintiff reported using wrist braces to drive, to write, or to use the computer. Id.

On July 3, 2017, Plaintiff, represented by counsel, appeared at the hearing before the ALJ. See id. at 33-60.

Plaintiff testified that she had not improved since her first surgery. Id. at 55, 57. Plaintiff testified that on average, over the course of a day, she could not sit for more than half a hour. Specifically, Plaintiff testified: "I have to be standing up, taking breaks, either walk or lay on my back or on my side depending on how my pain is." Id. at 57. Plaintiff testified that since November 21, 2013, she experienced: "repetitive pain coming from my neck going down to my shoulders, my arms, my fingers, as well to my back, my back to

6

my legs." Id. at 57-58. Plaintiff testified these symptoms made it difficult for her to stay still in one position. Id. at 58.

Plaintiff testified on a typical day:

> I – in an average of my day I can get out of bed if I have a good day. If not I need help to get out because I can't move. I have to slowly roll out of mine with pain . . . . Then I have to either lay down or elevate my legs and this goes throughout the day.

Id.

Plaintiff testified that she drove on average once or twice a day to doctor's appointments or the grocery store. Id. at 39. Plaintiff testified the furthest she had driven in the past two years was about five miles (on average). Id.

Plaintiff testified she continued to use wrist braces. Id. at 41. Plaintiff testified she wore these braces (on average) ten to twelve hours during a twenty-four hour period. Id. at 41-42. Plaintiff testified using her hands for half an hour made them go numb. Id. at 55. Plaintiff testified that she could use her hands for "[m]aybe less than an hour" and would need a break of about ten to fifteen minutes afterwards. Id.

Plaintiff also testified regarding various occasions in which she experienced symptoms of immobility. Specifically, Plaintiff testified regarding a January 2015 incident in which she had been unable to finish showering. Id. at 58-59; see also id. at 520. She also testified that similar incidents had occurred afterwards and a similar incident had occurred once while she was still working. Id.

### c. The ALJ's Treatment Of Plaintiff's Testimony

In his written decision, the ALJ made the following findings:

> The claimant has alleged disability due to carpal tunnel syndrome bilaterally; [spondyloarthropathy]; osteophyte complex at C3-4, C4-6, C5-7; and anxiety.
>
> After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged

7

symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

On initial review (Exhibit 1A) and on reconsideration review (Exhibit 3A), the State agency medical consultants limited the claimant to light exertional work with frequent climb ramps and stairs; never climb ladders, ropes or scaffolds; frequent stoop, kneel, balance, and crouch; occasional crawl; frequent handling and fingering bilaterally; occasional overhead reaching bilaterally; avoid concentrated exposure to extreme cold, vibrations, and hazards. I have given significant weight to these assessments for the period since February 4, 2017, as they are consistent with medical improvement indicated by progress notes and the opinion of the medical expert.

The medical expert opined that as of February 4, 2017, the claimant had the residual functional capacity to lift or carry 10 pounds frequently and 20 pounds occasionally; no limitation in standing, walking and sitting; avoid frequent overhead reaching; and avoid exposure to cold environments. I have given significant weight to the opinion of the medical expert. His opinion is supported by progress notes from the claimant's treating sources that [] show significant medical improvement by February 4, 2017. Attending hand surgeon Kupfer noted that the claimant had persistent sensory motor deficits involving both hands with associated paresthesia, but she had modest improvement in strength on February 8, 2017 (Exhibit 16F/75, 78). Examinations by Dr. Kupfer showed persistent tenderness over the carpal and pronator tunnels of the left arm; tenderness and some swelling over Guyon's canal; positive provocative testing of the left median and ulnar nerves with some decrease sensation to light touch involving all digits of the left hand; and moderate residual weakness (Exhibit 16F/77, 88). Dr. Kupfer noted that the claimant has had some relief with the use of Gabapentin (Exhibit 16F/89). Attending physician McSweeney's progress notes after February 2017 show good range of motion of the wrists and hands, positive Tinel's sign, positive Phalen's sign, no

8

> atrophy, positive tenderness in the paracervical and trapezius, reduced range of motion of the cervical spine, diffuse weakness in the upper extremities with limited effort due to pain (Exhibits lSF/28, 30; 18F/3). EMG/NCV testing in December 2016 was negative for entrapment neuropathy, peripheral neuropathy, or cervical radiculopathy in the bilateral upper extremities (Exhibit BF/48).
>
> AME Neil Halbridge, M.D., in a report dated January 4, 2017, restricted the claimant to lift no greater than 10 pounds; no overhead work; no typing, writing, or computer keyboarding or computer mouse work greater than 1 hour, 50 minutes with a 10-minute break in activity alternating throughout her normal 8-hour workday with both hands; no repetitive bend or stoop (Exhibit BF/52-53). I have given some weight to the opinion of Dr. Halbridge to the extent that it is consistent with the medical expert's opinion but discount it regarding the claimant's ability to lift or carry. I have given significant weight to the opinion of Dr. Halbridge. Progress notes show that the claimant healed well after the cervical spine surgery in February 2016, without complication. Dr. Halbridge did not find evidence of any abnormality of the cervical spine except for hypesthesia in the thumb and index finger of both hands (Exhibit BF/51). With respect to the lumbar spine, Dr. Halbridge cited MRI scan in November 2016 that showed multilevel degenerative disc disease with limitation of motion of the lumbar spine, positive nerve root tension signs and hypesthesia in the left anterolateral lower leg in the LS dermatome (Exhibit BF/51).
>
> In sum, the above residual functional capacity assessment for the period since February 4, 2017, is supported by medical expert and the opinion of AME Halbridge (Exhibit BF/52-53); the clinical findings, diagnostic studies, and course of treatment since February 4, 2017.

AR at 25-26.

The Parties do not challenge the ALJ's step one determination. The ALJ did not claim Plaintiff was malingering and Defendant does not argue that the ALJ made any such finding. As such, the Court considers the second part of the Ninth Circuit's two-part test:

whether the ALJ gave clear and convincing reasons for discounting Plaintiff's testimony.

Here, the Court finds that the ALJ failed to identify which of Plaintiffs statements the ALJ determined were not credible. This error prevents the Court from conducting a meaningful judicial review. See Reddick, 157 F.3d at 722 ("General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."); Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996) ([a]n ALJ "must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion.").

Under the Social Security Regulations in effect at the time of Plaintiff's application:

> It is not sufficient for the adjudicator to make a single, conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

Social Security Ruling 96-7p, 1996 SSR LEXIS 4, at *3-4; see Brown-Hunter v. Colvin, 806 F.3d 487, 493 (9th Cir. 2015) ("The governing Social Security rulings . . . are to be relied upon as precedents in adjudicating cases[.]") (citations omitted).[2]

---

[2] Social Security Ruling 96-7p was superseded by Social Security Ruling 16-3p, effective March 28, 2016. Social Security Ruling 16-3p, however, similarly provides that:

> In evaluating an individual's symptoms, it is not sufficient for our adjudicators to make a single, conclusory statement that "the individual's statements about his or her symptoms have been considered" or that "the statements about the individual's symptoms are (or are not) supported or consistent." It is also not enough for our adjudicators simply to recite the factors described

10

In contrast, in the instant case, the ALJ did not specifically reference any portion of Plaintiff's function report or hearing testimony. See AR at 18-27. Instead, the ALJ stated only that:

> [C]laimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

Id. at 25. The ALJ's vague reference to the entirety of Plaintiff's testimony as "statements concerning the intensity, persistence, and limiting effects" of Plaintiff's symptoms does not specifically identify which statements the ALJ found were not credible. Holohan v. Massanari, 246 F.3d 1195, 1208 (9th Cir. 2001) ("[T]he ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony.").

Likewise, the ALJ also failed to connect any specific portions of Plaintiff's testimony to the parts of the record supporting his decision. This error prevents the Court from determining whether the ALJ's decision was supported by substantial evidence. Brown-Hunter, 806 F.3d at 494 (finding legal error where ALJ failed to identify the testimony she found not credible and consequently "did not link that testimony to the particular parts of the record supporting her non-credibility determination."); see also Isis A. v. Saul, No. 18cv01728-W-MSB, 2019 U.S. Dist. LEXIS 130801, at *12 (S.D. Cal. Aug. 2, 2019) (ALJ's generic references to a plaintiff's statements as "complaints of

---

> in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms.

Social Security Ruling 16-3p, 2016 SSR LEXIS 4, *26.

disabling symptoms and limitations . . . did not specifically identify the statements that the ALJ was discrediting") (adopted by Avina v. Saul, No. 18-CV-1728-W-MSB, 2019 U.S. Dist. LEXIS 140324 (S.D. Cal. Aug. 19, 2019)); Eldridge v. Berryhill, No. 17cv497-JLS-BLM, 2018 U.S. Dist. LEXIS 87985, at *22-23 (S.D. Cal. May 23, 2018) ("The ALJ's vague references to Plaintiff's statements as 'allegations of disabling limitations' are not specific identifications of which statements are being discredited.") (adopted by Eldridge v. Berryhill, No. 17-CV-497-JLS-BLM, 2018 U.S. Dist. LEXIS 113699 (S.D. Cal. July 9, 2018)).

Defendant argues the ALJ properly discounted Plaintiff's allegations based on: (1) the opinion of medical expert Arthur Lorber, MD; (2) the medical evidence Dr. Lorber identified supporting his opinion; and (3) the inconsistency of Plaintiff's allegations with the medical evidence as of February 3, 2017. Def.'s Mot. at 5-6. In response, Plaintiff argues Defendant "simply highlights the objective evidence as reason to reject [Plaintiff's] testimony" but that Social Security "regulations specifically prohibit rejecting subjective pain testimony solely on the basis of objective medical evidence." Pl.'s Reply at 2.

The Ninth Circuit instructs that a claimant's testimony may not be discredited "solely because it is not substantiated by objective medical evidence." Trevizo, 871 F.3d at 679 (citations omitted). As set forth above, here, the ALJ merely asserted that "claimant's statements concerning the intensity, persistence, and limiting effects of [her symptoms] are not entirely consistent with the medical evidence" and then recited the medical evidence supporting his RFC finding. Id. at 25-26. As the Ninth Circuit has held: "an ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination." Brown-Hunter, 806 F.3d at 489; see Eldridge, 2018 U.S. Dist. LEXIS 87985, at *36 ("The ALJ's focus on the connection between the medical evidence and the RFC, instead of Plaintiff's testimony, failed to provide specific, clear, and convincing reasons for disbelieving specific statements from Plaintiff's testimony.").

///

## II. Third-Party Function Report

### a. Relevant Law

In the Ninth Circuit, lay testimony as to a claimant's symptoms or how an impairment affects a claimant's ability to work is competent evidence that the ALJ must take into account and "<u>cannot</u> be disregarded without comment." <u>Nguyen v. Chater</u>, 100 F.3d 1462, 1467 (9th Cit. 1996) (emphasis in original) (citations omitted); <u>see</u> <u>also</u> <u>Robbins v. SSA</u>, 466 F.3d 880, 885 (9th Cir. 2006) ("[T]he ALJ is required to account for all lay witness testimony in the discussion of his or her findings.") (citing <u>Lewis</u>, 236 F.3d at 511). In order to discount competent lay witness testimony, the ALJ "must give reasons that are germane to each witness." <u>Dodrill v. Shalala</u>, 12 F.3d 915, 919 (9th Cir. 1993). "Further, the reasons 'germane to each witness' must be specific." <u>Bruce v. Astrue</u>, 557 F.3d 1113, 1115 (9th Cir. 2009) (quoting <u>Stout v. Comm'r,</u> 454 F.3d 1050, 1053 (9th Cir. 2006)).

### b. Analysis

Plaintiff argues that the ALJ failed to discuss or otherwise consider a third party function report completed by Mr. Salvador Lopez. Pl.'s Mot. at 12. Defendant appears to concede that "the ALJ did not specifically address Mr. Lopez's statements" but argues that "any error is harmless because Mr. Lopez's statements are duplicative of Plaintiff's own allegations[.]" Def.'s Mot. at 7. Specifically, Defendant argues "Plaintiff does not identify any claims by Mr. Lopez that [Plaintiff] herself did not make[.]" <u>Id.</u> Defendant argues that "[b]ecause the ALJ needed only provide a germane reason for discounting Mr. Lopez's allegations, the ALJ's reliance on Dr. Lorber's opinion and the medical evidence applies with equal, if not greater, force to Mr. Lopez's claims." <u>Id.</u>

"[W]here the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." <u>Stout,</u> 454 F.3d at 1056.

Here, the Court cannot conclude the ALJ's failure to appropriately consider Mr. Lopez's statements was harmless error. As set forth above, the Court finds the ALJ did not

give specific, clear and convincing reasons for rejecting Plaintiff's testimony. Therefore, it follows that the ALJ's error in disregarding Mr. Lopez's statements cannot be considered harmless, even assuming that Defendant's argument is true and Mr. Lopez's statements were identical to Plaintiff's. See Alvarado v. Berryhill, No. CV 16-7207 AJW, 2017 U.S. Dist. LEXIS 139096, at *9 (C.D. Cal. Aug. 29, 2017) (ALJ's legal error in disregarding lay witness testimony that was cumulative of a claimant's testimony cannot be considered harmless error where ALJ did not articulate a legally sufficient reason for rejecting the claimant's subjective testimony).

### III. Remedy

The only remaining question for the Court is whether to remand for further administrative proceedings or for the payment of benefits.

"The decision of whether to remand a case for additional evidence, or simply to award benefits[,] is within the discretion of the court." Trevizo, 871 F.3d at 682 (quoting Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987)). "Remand for further administrative proceedings is appropriate if enhancement of the record would be useful." Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004).

The Ninth Circuit applies "a three-part credit-as-true standard, each part of which must be satisfied in order for a court to remand to an ALJ with instructions to calculate and award benefits[.]" Garrison, 759 F.3d at 1020. The standard is met where: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." Id. (footnote and citations omitted).

Even if all three requirements are met, the Court retains flexibility to remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." Brown-Hunter, 806 F.3d at 495. A remand for an immediate award of benefits is appropriate only

in rare circumstances.

Here, based on the record before it, the Court concludes that "[t]he rare circumstances that result in a direct award of benefits are not present in this case." Leon v. Berryhill, 874 F.3d 1130 (9th Cir. 2017). Instead, the Court finds further administrative proceedings would serve a meaningful purpose so that Plaintiff's testimony and Mr. Lopez's function report may be properly evaluated.[3]

## **CONCLUSION**

For the reasons set forth above, the Court **GRANTS** Plaintiff's Motion for Summary Judgment and **DENIES** Defendant's Cross-Motion for Summary Judgment. This case is **REMANDED** for further proceedings consistent with this opinion.

**IT IS SO ORDERED.**

Dated: January 7, 2020

_____
Honorable Linda Lopez
United States Magistrate Judge

---

[3] The Court notes Plaintiff also does not request that the Court remand for the direct payment of benefits. Instead, Plaintiff merely requests that the Court "remand for the correction of the legal errors." See Pl.'s Mot. at 15.